NO. 22-1907

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

MALCOLM WIENER,

Plaintiff-Appellant,

v.

MIB GROUP, INC. and JONATHAN SAGER,

Defendants-Appellees.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

## L.T. CASE NO. 1:22-CV-10799-WGY

## BRIEF OF DEFENDANTS-APPELLEES

Marissa I. Delinks, Bar Id. 111180
Hinshaw & Culbertson LLP
53 State Street, 27th Floor
Boston, MA 02109
Tel: 617-213-7000/Fax: 617-213-7001
mdelinks@hinshawlaw.com

*Counsel for Defendants-Appellees*

June 30, 2023

1053739\313977062.v1

## <u>CORPORATE DISCLOSURE STATEMENT</u>

There is no parent corporation of MIB Group, Inc. or any publicly held corporation owning 10% or more of its stock.

1053739\313977062.v1

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ................................................... i

TABLE OF AUTHORITIES .................................................................. i

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................1

    A.    North Carolina Litigation & Other Proceedings....................1

    B.    District Court of Massachusetts Proceedings.........................3

    C.    Wiener's Alleged Injury................................................5

SUMMARY OF ARGUMENT ..........................................................7

ARGUMENT .......................................................................... 10

I.    THE DISTRICT COURT WAS CORRECT TO FIND THAT
    WIENER FAILED TO SHOW AN INJURY IN HIS PLEADINGS
    AND AFTER WIENER SUBSEQUENTLY FAILED TO
    REFERENCE ANY RELEVANT HARM AT THE OCTOBER 13,
    2022 HEARING......................................................... 10

    A.    The Law Governing Standing and Standard of Review ................... 10

    B.    Judicial Notice of the North Carolina Litigation ............................... 13

    C.    The FAC Fails to Plausibly Plead an Injury-in-Fact......................... 14

        1.    Wiener has not plausibly alleged any financial harm............... 14

        2.    Nor has Wiener plausibly alleged any distress.......................... 18

    D.    Wiener Fails to Plausibly Plead Traceability and
        Redressability...................................................................... 20

E.  Wiener Could Not Aptly Respond to the District Court's
    Direct Inquiry as to Any Actual Injury ............................................. 23

    1.  The FAC does not allege that Wiener suffered an
        injury akin to common law invasion of privacy harm.............. 24

    2.  The litigation privilege precludes any tort based claim
        in any event ............................................................................. 26

CONCLUSION ............................................................................................. 30

1053739\313977062.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amrhein v. eClinicalWorks, LLC*,
   954 F.3d 328 (1st Cir. 2020)..................................................................12

*Auer v. TransUnion, LLC*,
   902 F.3d 873 (8th Cir. 2018) ................................................................13

*Banga v. Equifax Info. Servs. LLC*,
   2015 U.S. Dist. LEXIS 79342 (N.D. Cal. 2015) ..................................29

*Brokamp v. James*,
   66 F.4th 374 (2d Cir. 2023) ..................................................................12

*Brunett v. Convergent Outsourcing, Inc.*,
   982 F.3d 1067 (7th Cir. 2020) ..............................................................17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..................................................................16, 20, 21

*Department of Education et al. v. Brown et al.*,
   2023 U.S. LEXIS 2792 (June 30, 2023)..................................11, 20, 23

*Diamond v. Charles*,
   476 U.S. 54 (1986)................................................................................17

*Edwards v. Parrish Tire Co.*,
   2019 U.S. Dist. LEXIS 152041 (M.D.N.C. 2019) ...............................28

*Garland v. Orlans, PC*,
   999 F.3d 432 (6th Cir. 2021) ................................................................19

*Golden v. Intel. Corp.*,
   2023 U.S. App. LEXIS 11034 (Fed. Cir. May 5, 2023).......................13

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011)...................................................................14

*Hochendoner v. Genzyme Corp.*,
   823 F.3d 724 (1st Cir. 2016)...........................................................12, 18

i

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
 48 F.4th 1236 (11th Cir. 2022) ..........................................................13

*Jones v. Coward*,
 666 S.E.2d 877 (N.C. Ct. App. 2008) .................................................29

*Kowalski v. Gagne*,
 914 F.2d 299 (1st Cir. 1990) ...............................................................14

*Larkin v. Fin. Sys. of Green Bay*,
 982 F.3d 1060 (7th Cir. 2020) ............................................................13

*Laufer v. Acheson Hotels, LLC*,
 50 F.4th 259 (1st Cir. 2022)................................................................12

*Lewis v. Continental Bank Corp.*,
 494 U.S. 472, 110 S. Ct. 1249 (1990)..................................................17

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)............................................................11, 14, 23

*Maddox v. Bank of N.Y. Mellon Trust Co.*,
 19 F.4th 58 (2d Cir. 2021) ..................................................................19

*McManaway v. LDS Family Servs.*,
 2010 N.C. App. LEXIS 2305 (N.C. Ct. App. 2010)...........................28

*National Family Planning & Reproductive Health Assn., Inc.*, 468
 F.3d 826 (D.C. Cir. 2006) ...................................................................21

*O'Leary v. Trustedid, Inc.*,
 60 F.4th 240 (4th Cir. 2023) ...............................................................21

*Pennell v. Glob. Tr. Mgmt., LLC*,
 990 F.3d 1041 (7th Cir. 2021) .............................................19, 25, 26

*Pennsylvania v. New Jersey*,
 426 U.S. 660, 96 S. Ct. 2333 (1976)....................................................21

*Persinger v. Southwest Credit Sys., L.P.*,
 20 F.4th 1184 (7th Cir. 2021) .............................................................27

*Pierre v. Midland Credit Mgmt.*,
  29 F.4th 934 (7th Cir. 2022) ..................................................................17

*Portugues-Santana v. Rekomdiv Int'l Inc.*,
  725 F.3d 17 (1st Cir. 2013) ....................................................................14

*Rodi v. S. New England Sch. of L.*,
  389 F.3d 5 (1st Cir. 2004) ......................................................................14

*Spokeo, Inc. v. Robins*,
  578 U. S. 330 (2016).................................................................16, 18, 27

*Spuhler v. State Collection Serv.*,
  983 F.3d 282 (7th Cir. 2020) ..................................................................13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83, 118 S. Ct. 1003 (1998).......................................................17

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)......................................................................12, 18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)...................................................................*passim*

*Wadsworth v. Kross, Lierbman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) ..................................................................19

*Wiener v. AXA Equitable Life Ins. Co.*,
  481 F. Supp. 3d 551 (W.D.N.C., Aug. 24, 2020)....................................2, 17, 21

*Wiener v. AXA Equitable Life Ins. Co.*,
  58 F.4th 774 (4th Cir. 2023) ..................................................................3, 23

*Xavier v. Evenflo Co. (In re Evenflo Co.)*,
  54 F.4th 28 (1st Cir. 2022)............................................................*passim*

## Statutes

Fair Credit Reporting Act ..................................................................*passim*

1053739\313977062.v1

## STATEMENT OF THE ISSUES

1.     Whether the District Court correctly found Plaintiff-Appellant Wiener failed to show an injury-in-fact sufficient for Article III standing in his pleadings and after Wiener subsequently failed to cite any relevant harm at the October 13, 2022 hearing in response the District Court's direct question.

2.     Whether vaguely pleaded and implausible conclusions, such as "distress" and "financial harm" contained in a single complaint paragraph devoid of further factual enhancement, are sufficient to establish Article III standing.

## STATEMENT OF THE CASE

### A.     North Carolina Litigation & Other Proceedings

Plaintiff-Appellant Malcolm Wiener ("Wiener") is involved in a longstanding and heated dispute with his former life insurance carrier, AXA Equitable Life Insurance Company ("AXA"), in different jurisdictions and in multiple pending matters. RA0011-0012 ¶¶ 7-14; RA0014 ¶¶ 24-25; *Wiener v. AXA Equitable Life Ins. Co.*, Case Nos. 1:16-cv-04019 (S.D.N.Y.) & 22-894 (2d Cir.); *Wiener v. AXA Equitable Life Ins. Co.*, Case Nos. 3:18-cv-00106 (W.D.N.C.) & 21-2165 (4th Cir.).

As part of the litigation in the Western District of North Carolina ("the North Carolina litigation"), Defendant-Appellee Jonathan Sager ("Sager"), Executive Vice President and General Counsel of Defendant-Appellee MIB Group, Inc. ("MIB"), provided an affidavit on June 17, 2020 ("the Sager Affidavit"), RA0015 ¶¶ 26-30,

1

and testimony at trial on September 9, 2020 ("the Sager Testimony"). RA0015-0016 ¶¶ 31-34. The Sager Affidavit is Exhibit A to Wiener's First Amended Complaint ("FAC"). RA0023-RA0028. The Sager Testimony is Exhibit B to the FAC. RA0029-RA0039.

Wiener filed a motion to strike the Sager Affidavit and, alternatively, a request to preclude the (future) Sager Testimony at trial in the North Carolina litigation. *Wiener v. AXA Equitable Life Ins. Co.*, 481 F. Supp. 3d 551, 556, 560 (W.D.N.C., Aug. 24, 2020). The motion also sought to compel discovery of information related to MIB. *Id.*, 481 F. Supp. 3d at 560. Wiener argued that "he did not learn of [AXA's] reliance on the [MIB information] until [AXA] filed Sager's Declaration …." *Id.* at 560. The District Court denied the relief, stating that the motion was "meritless" and that at least one of Wiener's arguments as to the Sager Affidavit and the Sager Testimony was "patently false." *Id.* at 560-63. The District Court held that Wiener "was well aware of the [MIB information] long before [AXA] filed Sager's Declaration." *Id.* at 562.

Conversely, AXA filed a motion to exclude evidence that any life insurance company rejected Wiener's application for life insurance based on its review of MIB information. *Id.* at 556. The District Court agreed with AXA and held that "[t]here is no evidence that any life insurance company rejected [Wiener's] application based on its review of the [MIB information] …." *Id.*

The case went to jury trial and an $8 million judgment was entered in Wiener's favor. *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 777-78 (4th Cir. 2023). The court then dismissed the case on a post-trial motion, which the Fourth Circuit Court of Appeals subsequently reversed and remanded for further proceedings. *Id.*[1]

Wiener's complaint in the North Carolina litigation seeks recovery of "any and all attorney's fees" and "all costs" in that action. *Wiener v. AXA Equitable Life Ins. Co.*, Case Nos. 3:18-cv-00106 (W.D.N.C.) Doc. 1-2 at p. 12.

### B.   <u>District Court of Massachusetts Proceedings</u>

On May 24, 2022, Wiener sued MIB and Sager in this action alleging that certain unspecified disclosure(s) within the Sager Affidavit and/or the Sager Testimony from the North Carolina litigation violated the Fair Credit Reporting Act ("FCRA"). RA0005.

On July 15, 2022, Wiener amended his complaint and filed the operative FAC. RA0010-RA0039. The FAC also alleged that disclosure(s) within the Sager Affidavit and/or the Sager Testimony violated the FCRA. RA0015-0018 ¶¶ 26-42.

MIB and Sager filed moved to dismiss the FAC on the grounds that Wiener failed to allege an injury sufficient to establish Article III standing and that the FAC

---

[1] As of June 20, 2023, the court in the North Carolina litigation had ordered the parties to file briefs (plaintiff by July 14, 2023, and defendant by August 14, 2023) "addressing the issues now before this Court." *Wiener v. AXA Equitable Life Ins. Co.*, Case No. 3:18-cv-00106 (W.D.N.C.), June 20, 2023 docket entry.

failed to state a claim. RA0048-0075. In regard to Article III standing, MIB and Sager contended that (what they thought were) the allegedly violative disclosure(s) in the Sager Affidavit and the Sager Testimony were truthful and accurate, and moreover, that the information involved was already public. RA0059 & 0068.

In response, Wiener argued that MIB & Sager's motion addressed the wrong purported disclosure(s). RA0080. Wiener clarified (and narrowed) his operative claim as follows:

> Defendants' brief – whether intentionally or erroneously – argues the information at issue in this case is disclosure of the MIB codes (health information) from Mr. Wiener's MIB file. The complaint makes clear this is not so. Thus, while Plaintiff will briefly recite the facts below, at the outset Plaintiff highlights that **it was Defendants' voluntary disclosure that only AXA and its reinsurer had made a formal inquiry of Plaintiff's MIB file that is at issue in this case** (the "Disputed Disclosure").

RA0080 (Emphasis added).

Wiener labeled the operative disclosure the "Disputed Disclosure" but a more accurate name is the "Disclosure of No Other Inquiries." In other words, Wiener indicated that his claim is entirely predicated upon Sager's disclosure of the benign fact that no other companies (other than AXA) had submitted any inquiries to MIB concerning Wiener. RA0080.

In any event, Wiener plainly told the District Court (and MIB and Sager) that the Disclosure of No Other Inquiries from the Sager Affidavit and the Sager

Testimony is the exclusive operative communication that he contends violated the FCRA in this case. RA0080.

Wiener has never asserted that anything stated within the Sager Affidavit and/or the Sager Testimony was false or inaccurate, including the Disclosure of No Other Inquiries. See generally RA0076-0079; RA0018 ¶ 43.

### C.     <u>Wiener's Alleged Injury</u>

Wiener's purported injury from the truthful and accurate Disclosure of No Other Inquiries is contained entirely in a single paragraph of the FAC (¶ 43), which states:

> The voluntary [Disclosure of No Other Inquiries] to AXA was after discovery had concluded in the underlying action, thus **Plaintiff incurred attorney's fees and costs associated with having to respond to information in the litigation** that should never have been disclosed and without the typical discovery methods that should have been available to him. This placed Plaintiff at a substantial disadvantage in the litigation and **caused not only financial harm but distress as well.**

RA0018 ¶ 43 (Emphasis added).

Sager and MIB's motion to dismiss the FAC was fully briefed and the District Court set a hearing on it for October 13, 2022. RA0008. At the hearing, the District Court informed Wiener that he had a problem with Article III standing and directly questioned Wiener about his purported injury as follows:

THE COURT: All right.

1053739\313977062.v1

Now this is a motion to dismiss and I'm going to turn to the plaintiff because your most difficult problem, it seems to me, is constitutional standing here. **How is [Wiener] harmed**? [Emphasis added].

RA0043.     Wiener responded as follows:

MS. DELUHERY: Judge, there are two aspects of the harm for standing purposes set out in our papers. The first is, consistent with *TransUnion*, which recognized that a longstanding common law harm can serve as a basis of injury for Article III standing purposes. There it was publication of defamatory material, obviously long recognized at common law. Here, similar to the plaintiff in *TransUnion* we have the invasion of a privacy interest, a privacy interest which has been protected in the common law for over 100 years, and we cite to Warren and Brandeis's paper in 1890, the First Restatement of Torts in 1939, et cetera. And the fact that a privacy interest and invasion of privacy harm has been recognized in the common law for over 100 years and, um, suffices to provide injury.

This is not a situation where we rely on Congress's passage of the FCRA to create a privacy right. A privacy right existed previously.

RA0043-0044.

The remaining exchange between the District Court and Wiener went

like this:

THE COURT: You'll agree with me that – and I'm talking in the 1L sense. You haven't got any case like this?

MS. DELUHERY: I have not cited a case similar to ours, that's correct, your Honor.

THE COURT: Yeah, and I appreciate your candor. So here's a statement made in the course of litigation but no other identifiable harm.

MS. DELUHERY: I disagree with that in one respect. Mr. Sager, the General Counselor [sic] and Executive Vice-President of MIB, searched the records with no FCRA-authorized purpose to do so, that

itself is a violation. Although I would concede doesn't provide concrete injury for standing purposes. Then he voluntarily contacts AXA, the plaintiff's litigation adversary in a separate piece of litigation and discloses. There was no subpoena. There was no court compulsion to do so. He was not disclosed as a witness in the litigation yet. The information was subsequently reduced to an affidavit and filed. But the complaint alleges that he picked up the phone and called and disclosed voluntarily on his own.

THE COURT: Okay.

MS. DELUHERY: That is not permitted under the FCRA.

RA0044-0045.

Notably, Wiener never argued nor mentioned that he suffered "financial harm" or "distress" at the October 13, 2022 hearing in response to the District Court's direct question: "How is he harmed?" RA0043. Wiener did not cite "attorney's fees and costs" either. *See id.* Instead, Wiener took the position that his injury was instead akin to invasion of privacy harm. RA0043-0044.

Based on the above record, the District Court dismissed the case due to lack of Article III standing. RA0040, 0046.

Wiener has never filed, nor sought leave to file, an additional amended complaint at any point, then, before or since.

## SUMMARY OF ARGUMENT

The FAC does not plausibly allege a concrete and particularized injury that is actual or imminent nor an injury that is not conjectural or hypothetical. Rather, the FAC only provides two conclusory labels, "financial harm" and "distress" in a single

paragraph and vaguely alleges that Wiener "incurred attorney's fees and costs associated with having to respond to information in the [North Carolina] litigation." RA0018 ¶ 43. The FAC provides no further facts or elaboration as to these bare conclusions and this Court should hold that vague conclusory labels like these are insufficient to plausibly allege an injury-in-fact.

Wiener has not plausibly plead any financial harm. He already seeks recovery of his fees and costs in the pending North Carolina litigation. If Wiener recovers fees and costs in the North Carolina litigation, he will have suffered no financial harm. Thus, his claims are conjectural and hypothetical at best. Likewise, allegations of possible future injury are not sufficient for establishing Article III standing. Overall, the FAC's conclusory labels do not allege a concrete injury.

Additionally, routine type distress does not confer Article III standing in federal courts. While it is unclear what distress Wiener suffered according to the FAC, it makes little sense that a seemingly benign (and truthful and accurate) communication, somehow materially caused Wiener distress above and beyond that already incurred in the normal course of the North Carolina litigation. The FAC paragraph 43 allegations are not plausible and remain on the record as naked assertions of harm devoid of further factual enhancement.

The FAC also does not allege a sufficient injury traceable to MIB and/or Sager that is redressable here. Any financial harm or distress here has arguably been caused

by Wiener himself and is traceable to Wiener, AXA or the court in North Carolina not MIB or Sager.

At the October 13, 2022 motion to dismiss hearing, the District Court informed Wiener that he had a problem with Article III standing and directly questioned Wiener about his purported injury. There was no ambiguity with the District Court's concern. The judge plainly asked:. "How is he harmed?" RA0043. Wiener did not cite (nor even mention) "financial harm," "distress" and/or "attorney's fees and costs" in response. RA0043-0044. Instead, Wiener took the position that his injury in this case was instead akin to common law invasion of privacy harm. RA0043-0044. Significantly, the FAC itself does not allege that Wiener suffered an injury akin to common law invasion of privacy harm. So, Wiener is arguing upon complaint allegations that do not exist and this Court need not entertain the common law analogue argument. This notwithstanding, Wiener's position lacks substantive merit.

As the District Court correctly noted and Wiener conceded, there is no caselaw supporting Article III standing in this situation based on an invasion of privacy analogue argument because this case involves a purported statement made in the course of litigation with no other identifiable harm. To the extent Wiener contends that he does not need to establish an injury beyond the statutory violation itself, his argument was expressly rejected in *TransUnion*, 141 S. Ct. at 2205. If

9

Wiener is attempting to argue that incurring fees and costs as a result of filing a (meritless) motion in the North Carolina litigation somehow bears a "close relationship" with invasion of privacy harm, his argument makes no sense.

Bottom line, Wiener has not adequately pleaded that he was injured by the alleged statutory violation at all—much less in a way that closely relates to a traditional analogue for a federal lawsuit. The Sager Affidavit and Sager Testimony were made in the context of the North Carolina litigation. The litigation privilege shields litigants in North Carolina from common law liability for the alleged statements under common law tort theories such as invasion of privacy or intrusion upon seclusion. This alone demonstrates that there are no issues in this case that bear a "close relationship" to invasion of privacy or other common law torts. This Court should decline to find Article III standing based upon Wiener's common law analogue argument.

As the party invoking federal jurisdiction, it is Wiener's burden to demonstrate that he has standing. *TransUnion*, 141 S. Ct. at 2207-08. He failed to do so and the District Court correctly dismissed the case.

## ARGUMENT

I.  THE DISTRICT COURT WAS CORRECT TO FIND THAT WIENER FAILED TO SHOW AN INJURY IN HIS PLEADINGS AND AFTER WIENER SUBSEQUENTLY FAILED TO REFERENCE ANY RELEVANT HARM AT THE OCTOBER 13, 2022 HEARING

   A.  The Law Governing Standing and Standard of Review.

The authority of federal courts is limited by Article III of the Constitution to resolving "Cases" or "Controversies." Art. III § 2; *Department of Education et al. v. Brown et al.*, 2023 U.S. LEXIS 2792, at *3 (June 30, 2023); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The doctrine of standing implements this limit and jurisprudence has established that the irreducible constitutional minimum of standing contains three elements that a plaintiff must plead and – ultimately – prove. *Department of Education* at 7. To satisfy the standing requirement, a plaintiff must sufficiently plead: injury-in-fact, traceability, and redressability. *Xavier v. Evenflo Co. (In re Evenflo Co.)*, 54 F.4th 28, 34 (1st Cir. 2022), citing *TransUnion*, 141 S. Ct. at 2203.

First, the plaintiff must have suffered an injury-in-fact that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Department of Education* at 7; *Xavier* at 34, citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Second, the plaintiff's injury must be fairly traceable to the challenged action of defendant, meaning that there must be a causal connection between the injury and the conduct complained of. *Id*. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*.

As the party invoking federal jurisdiction, it is plaintiff's burden to demonstrate that he has standing. *TransUnion*, 141 S. Ct. at 2207-08. Standing is not

dispensed in gross; rather, plaintiff must demonstrate standing for each claim that he presses. *Id.*

The First Circuit, "like the majority of our sister circuits" applies "the plausibility standard applicable under Rule 12(b)(6) to standing determinations at the pleadings stage." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730-31 (1st Cir. 2016) (collecting cases). The Court in *Hochendoner* held:

> In the interest of clarity, we make explicit today what our cases have implied and what the near uniform precedent in other circuits has established: at the pleadings stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft.

*Id.* at 731 (citations omitted).

Therefore, even at the pleading stage, a plaintiff must demonstrate standing through: (1) <u>facts</u> that (2) <u>clearly</u> and (3) <u>plausibly</u> allege an injury. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020) (affirming dismissal because "the plaintiffs have failed to plausibly and clearly allege a concrete injury"); *Xavier*, 54 F.4th at 36 (recognizing that its proper to reject Article III standing where a plaintiff fails to allege facts that plausibly allege an injury); *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 267 (1st Cir. 2022) ("At this point, our only question is, putting the merits aside, whether Laufer plausibly alleges she was injured …."); *Amrhein v. eClinicalWorks, LLC*, 954 F.3d 328, 330 (1st Cir. 2020) (plaintiffs must plausibly and clearly allege facts demonstrating each element of standing); *Brokamp v. James*, 66 F.4th 374, 386

1053739\313977062.v1

(2d Cir. 2023) (a plaintiff must allege facts plausibly demonstrating an injury-in-fact, traceability and redressability); *Golden v. Intel. Corp.*, 2023 U.S. App. LEXIS 11034, at *3 (Fed. Cir. May 5, 2023) (vague, conclusory allegations of injury are not adequate for Article III standing); *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1241 (11th Cir. 2022) ("at the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, "plausibly" state that the elements of standing are met."); *Spuhler v. State Collection Serv.*, 983 F.3d 282, 285–86 (7th Cir. 2020) (At the pleading stage, plaintiff must demonstrate standing by "clearly" pleading allegations that "plausibly suggest" each element of standing); *Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060, 1066 (7th Cir. 2020) (rejecting allegations too abstract and conjectural to constitute an injury in fact); *Auer v. TransUnion, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) (reversing and remanding FCRA case with instructions to dismiss for lack of jurisdiction because plaintiff's "naked assertion[]" of harm "devoid of 'further factual enhancement,'" fell short of plausibly establishing injury).

Whether a plaintiff has satisfied his obligation to establish standing is subject to *de novo* review. *Xavier*, 54 F.4th at 34.

B.    Judicial Notice of the North Carolina litigation

This Court can take judicial notice of the North Carolina litigation. "It is well-accepted that federal courts may take judicial notice of proceedings in other courts

if those proceedings have relevance to the matters at hand." *Rodi v. S. New England Sch. of L.*, 389 F.3d 5, 18-19 (1st Cir. 2004); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). When reviewing an order of dismissal, in addition to the well-plead facts alleged in the complaint and the reasonable inferences we draw in plaintiff's favor, we may look to matters of public record and facts susceptible to judicial notice. *Portugues-Santana v. Rekomdiv Int'l Inc.*, 725 F.3d 17, n.7 (1st Cir. 2013) citing *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

C.    The FAC Fails to Plausibly Plead an Injury-in-Fact

The FAC does not plausibly allege a "concrete and particularized" injury that is "actual or imminent" nor an injury that is "not conjectural or hypothetical." *Xavier* at 34 citing *Lujan* at 560. Rather, the FAC only provides two conclusory labels, "financial harm" and "distress" in a single paragraph and vaguely alleges that Wiener "incurred attorney's fees and costs associated with having to respond to information in the [North Carolina] litigation." RA0018 ¶ 43. The FAC provides no further facts or elaboration as to these bare conclusions.

To be clear, Wiener purports to sue Sager, a non-party witness tangentially connected to Wiener's North Carolina litigation, in the District Court of Massachusetts for a true and accurate Disclosure of No Other Inquiries that is vaguely alleged to exist somewhere within the Sager Affidavit and/or the Sager Testimony and/or elsewhere. As a result of this abstract and conjectural theory,

14

Wiener claims harm in the form of "attorney's fees and costs" and "distress" from the North Carolina litigation which he himself chose to file and pursue. However, if simply claiming "attorney's fees and costs" or "distress" from events surrounding litigation was sufficient to create Article III standing in other courts against other parties and non-parties, then successive litigation would be endless and the federal courts truly have no limit to overcome. To the contrary, this Court should hold that vague conclusory labels like these are insufficient to plausibly allege an injury-in-fact.

### 1.    Wiener has not plausibly alleged any financial harm.

As to "financial harm" and "attorney's fees and costs" incurred in the North Carolina litigation, Wiener ignores that his complaint in the North Carolina litigation already seeks recovery of "any and all attorney's fees" and "all costs." *Wiener v. AXA Equitable Life Ins. Co.*, Case Nos. 3:18-cv-00106 (W.D.N.C.) Doc. 1-2 at p. 12. The North Carolina litigation is still pending. An $8 million judgment is apparently in place but not final. Thus, whether Wiener will eventually be compensated for "any and all attorney's fees" and "all costs" in the North Carolina litigation has yet to be finally determined. As a result, this vaguely alleged harm is the very opposite of "actual or imminent." Rather, it falls squarely within the "conjectural and hypothetical" category. Obviously, if Wiener recovers "any and all

1053739\313977062.v1

attorney's fees" and "all costs" in the North Carolina litigation, he will have suffered no financial harm as alleged in this action.

Likewise, allegations of possible future injury are not sufficient to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is certainly not impending" or "by incurring costs in anticipation of nonimminent harm." *Clapper* at 401, 416, 422. Here, Wiener is apparently attempting to manufacture standing similar to the plaintiff in *Clapper*. However, allegations of hypothetical "financial harm" or "attorney's fees and costs" that may or may not ever manifest in the future are squarely precluded as sufficient under *Clapper*. This Court should follow *Clapper*.

Further, the FAC's conclusory labels do not allege a "concrete" injury. An injury is concrete only if it actually exists. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Here, to the contrary, the abstract "financial harm" alleged in paragraph 43 of the FAC lacks concreteness. In Paragraph 43, Wiener summarily alleges that he incurred attorney's fees having to respond to additional discovery in the North Carolina litigation and that this caused him substantial financial harm. Wiener does not disclose, however, that one of his attorneys in the North Carolina litigation is his wife. *See Wiener v. AXA Equitable Life Ins. Co.*, Case No. 3:18-cv-00106 (W.D.N.C.), Doc Nos. 100, 101, 103, 105 & 111. Nor does he provide any facts to

support his claim that the fees he was purportedly charged to respond to the additional discovery demands were, in fact, "substantial." The discovery motion he filed in relation to this issue was held to be "meritless" and the issues raised within were ruled irrelevant in the North Carolina litigation. *Wiener*, 481 F. Supp. 3d at 556-60.

Nonetheless, as a general premise, there is no Article III standing in federal court due to incurring legal expense from retaining an attorney. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S. Ct. 1003, 1019 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation …."); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 1255 (1990) (an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits …."); *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) ("the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III."); *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 939 (7th Cir. 2022) ("Indeed, the concreteness requirement would be an empty one if all it took was contacting a lawyer…."); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020) ("A desire to obtain legal advice is not a

reason for universal standing. The plaintiffs in *Thole, Spokeo, Hein*, and *Richardson* all had counsel. They had been concerned, confused, disturbed, or upset enough to ask lawyers for help. But the Supreme Court held that only people who can show personal, concrete injuries may litigate.").

Here, the FAC is best described as lacking the "necessary heft" required in the First Circuit and its sister circuits to sufficiently plead Article III standing because the allegations are entirely "conclusory" and rely on "unfounded speculation." *Hochendoner*, 823 F.3d at 730-31.

The FAC does not allege how exactly Wiener has been financially harmed other than by hypothetical and conjectural attorney's fees and even then, it lacks sufficient facts explaining how, when, where, why and to whom Wiener owes or will eventually owe attorney's fees. Overall, it makes little sense that the No Other Inquiries Disclosure, a seemingly benign (and truthful and accurate) communication, somehow materially caused Wiener financial harm above and beyond that already incurred in the normal course of the North Carolina litigation. Therefore, paragraph 43 does not plausibly allege that Wiener has sustained a financial harm. Rather, the allegations are legally insufficient "naked assertions of harm devoid of further factual enhancement." RA0018 ¶ 43.

> ### 2.    Nor has Wiener plausibly alleged any distress.

Routine type "distress" – here apparently a byproduct of the North Carolina litigation Wiener himself initiated – does not confer Article III standing in federal courts either. *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 66 (2d Cir. 2021) ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (holding stress—without accompanying physical manifestation—does not suffice for standing); *Wadsworth v. Kross, Lierbman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (rejecting "stress," "anxiety," and "uncertainty" as bases for standing); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (finding the plaintiff's injuries cannot create standing because bare allegations of anxiety do not qualify as injuries in fact).

Here, it is again unclear what "distress" Wiener suffered according to the FAC. In his brief Wiener contends that "emotional distress" is at issue in this case and characterizes his injury as "mental distress." Wiener Br. at 10, 19, 33. 33. But the words "emotional" and "mental" are conspicuously absent from the FAC.

Still, it makes little sense that the No Other Inquiries Disclosure, a seemingly benign (and truthful and accurate) communication, somehow materially caused Wiener emotional or mental distress above and beyond that already incurred in the normal course of the North Carolina litigation. Absent further factual allegations,

19

not present here, the FAC fails to plausibly plead that Wiener suffered harm in the form of distress to show Article III injury.

### D.     Wiener Fails to Plausibly Plead Traceability and Redressability

The FAC also does not allege a sufficient injury traceable to MIB and/or Sager that is redressable here. Traceability requires the plaintiff to show a sufficient causal connection between the challenged action and the identified harm. *Department of Education* at 7; *Xavier* at 34 citing *Lujan at* 560. The plaintiff's injury must be "fairly traceable to the challenged action of defendant," meaning that "there must be a causal connection between the injury and the conduct complained of." *Id*. Redressability requires the plaintiff to show that a favorable resolution of his claim would likely redress the professed injury. *Id*. It must be ""likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id*.

Notably, it was Wiener here who hired a lawyer and sued AXA in the North Carolina litigation. MIB and/or Sager did not sue Wiener. It was Wiener who chose to take the actions in the North Carolina litigation for which he is now claiming he vaguely incurred attorney's fees and costs. Any "financial harm" or "distress" here has arguably been caused by Wiener himself and is traceable to him (or AXA or the court in North Carolina), not MIB or Sager.

Self-inflicted injuries are not fairly traceable to a defendant and therefore they are not sufficient for Article III standing in federal courts. *See, e.g.*, *Clapper*. 568

U.S. at 415. A plaintiff cannot "establish standing based on the measures that they have undertaken to avoid" the alleged harm because the injury the plaintiff seeks to avoid is "not certainly impending." *Id.* In other words, a plaintiff cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Id.* (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S. Ct. 2333, 2335 (1976) ("No State can be heard to complain about damage inflicted by its own hand.")); *National Family Planning & Reproductive Health Assn., Inc.*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing.")).

Wiener here filed a motion to strike the Sager Affidavit and, alternatively, a request to preclude the (future) Sager Testimony at trial in the North Carolina litigation. *Wiener v. AXA Equitable Life Ins. Co.*, 481 F. Supp. 3d at 556. However, the District Court denied the relief, stating that the motion was "meritless" and that at least one of Wiener's arguments as to the Sager Affidavit and the Sager Testimony was "patently false." *Id.*, 481 F. Supp. 3d at 560-63. Wiener's purported fees and/or distress sustained due to his decision to file a meritless motion is not traceable to MIB or Sager and is not redressable in this case. Instead, "[t]hat's the kind of daisy chain of speculation that can't pass muster under Article III." *O'Leary v. Trustedid, Inc.*, 60 F.4th 240, 245 (4th Cir. 2023) citing *Clapper*, 568 U.S. at 410-411 (rejecting Article III standing in an FCRA case due to lack of traceability). Wiener may be

21

unhappy with how the North Carolina District Court ruled but that does not entitle him to drag the dispute into this Court for a second bite at the apple. Again, overall, these allegations are neither clear nor plausible.

Furthermore, much of the purported Disclosure of No Other Inquiries (in the Sager Testimony) was apparently made in response to questioning from Wiener's own attorney. RA0032-0037. Thus, Wiener himself made the litigation choice to highlight the Disclosure of No Other Inquiries on the record. Likewise, he has further highlighted the Disclosure of No Other Inquiries by filing this lawsuit. This demonstrates that it is much more plausible that this case involves nothing more than a collateral attack on a witness or an attempt to gain an advantage as to the pending the North Carolina litigation, as opposed to an actual redressable harm somehow traceable to the seemingly benign (and truthful and accurate) No Other Inquiries Disclosure.

Additionally, the fact that Wiener's complaint in the North Carolina litigation already seeks recovery of "any and all attorney's fees" and "all costs" makes redressability in this case implausible. *Wiener v. AXA Equitable Life Ins. Co.*, Case Nos. 3:18-cv-00106 (W.D.N.C.) Doc. 1-2 at p. 12. Again, the North Carolina litigation is still pending. Thus, whether Wiener will eventually be compensated for "any and all attorney's fees" and "all costs" in the North Carolina litigation has yet to be determined. Redressability is therefore "merely speculative" as opposed to

"likely," which is not sufficient for establishing Article III standing in federal courts. *Department of Education* at 7; *Xavier* at 34 citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In the event Wiener is awarded all fees and costs in the North Carolina litigation, (and assuming that that the federal court system would deny Wiener a windfall double recovery), his claims of harm here would be rendered moot. Moreover, whether Wiener's request for fees and costs in the North Carolina litigation is granted or denied, res judicata principles will preclude the District Court from revisiting this issue in this litigation.

Finally, the North Carolina litigation went to jury trial and an $8 million judgment was entered in Wiener's favor. *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 777-78 (4th Cir. 2023). It apparently remains to be seen what happens with that judgment. But what is patently clear, however, is that Wiener has been not been harmed as a result. For this additional reason, the FAC fails to plausibly allege either the traceability and redressability elements.

E.    Wiener Could Not Aptly Respond to the District Court's Direct Inquiry as to Any Actual Injury.

At the October 13, 2023 hearing on the Defendants' motion to dismiss, the District Court informed Wiener that he had a problem with Article III standing and directly questioned his counsel about his purported injury. There was no ambiguity about what the District Court was asking. The judge plainly asked: "How is he harmed?" RA0043.

Incredibly, Wiener did not contend (or even mention) that he sustained "financial harm," "distress" and/or "attorney's fees and costs" in response to the District Court's direct question. RA0043-0044.

Regardless, this was Wiener's opportunity to advise the District Court that the prospect of further "factual enhancement" of the vague and unclear FAC paragraph 43 might potentially exist in this case, such that the case could or should continue and/or an additional complaint amendment be allowed to remedy the problem. However, Wiener did not provide the District Court with any such facts nor did he provide the District Court with an answer regarding the relevant harm he alleged suffered.

Instead, Wiener took the position that his injury in this case was instead akin to common law invasion of privacy harm. RA0043-0044. Based on the record, the District Court correctly dismissed the case due to lack of Article III standing. RA0040, 0046.

1. The FAC does not allege that Wiener suffered an injury akin to common law invasion of privacy harm.

To begin, the FAC does not allege – or even mention – that Wiener suffered an injury akin to common law invasion of privacy harm. In fact, while Wiener repeatedly refers to "invasion of privacy" as well as "intrusion upon seclusion" as potential common law analogues in his opening brief (see Wiener's Br. at 32-37),

none of these terms is mentioned in the FAC. RA0010-0022. Wiener is arguing upon

complaint allegations that do not exist.

As held in *Pennell v. Global Trust Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir.

2021), in a similar situation, this Court does not even need to entertain these

arguments:

> But we need not entertain Pennell's invasion of privacy argument.
> When courts analyze standing, "allegations matter." *Thornley v.
> Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021) ("Our
> job is to decide whether [plaintiffs] have Article III standing to pursue
> the case they have presented in their complaint."). What matters here,
> then, is what Pennell alleged in her operative complaint. *See id.* at
> 1242; *see also Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir.
> 1976) (per curiam) (noting that "[t]he question of standing is generally
> determined from the face of the complaint"). Pennell did not complain
> that her injuries included any perceived invasion of privacy. On appeal
> she cannot broaden her complaint by inserting a new injury. That is
> because "an important corollary" to the injury-in-fact determination "is
> the requirement that the plaintiff must clearly allege facts
> demonstrating each element." *Thornley*, 984 F.3d at 1245-46 (internal
> quotation marks omitted); *see also Collier v. SP Plus Corp.*, 889 F.3d
> 894, 896 (7th Cir. 2018) (per curiam) (looking at plaintiffs' complaint
> to determine whether they sufficiently alleged an actual injury). The
> only injuries Pennell included in her complaint were stress and
> confusion, and those do not suffice for standing.

Here, as in *Pennell*, Wiener's alleged injuries purportedly caused by the

Disclosure of No Other Inquiries were "financial harm," "distress" and "attorney's

fees and costs." RA0018 ¶ 43. Wiener did not allege in the FAC that the Disclosure

of No Other Inquiries was akin to a harm sustained due to an invasion of his privacy.

There is simply no need for this Court to consider a claimed injury on appeal that was not asserted in a complaint. This Court should follow *Pennell*.

> 2. The litigation privilege precludes any tort based claim in any event.

Regardless, however, as the District Court correctly noted and Wiener conceded, there is no caselaw supporting Article III standing in this situation based on a claim of invasion of privacy. This is because the statements Wiener complains caused him this type of harm (that he failed to plead) were made in the course of litigation with no other identifiable harm:

> THE COURT: You'll agree with me that – and I'm talking in the 1L sense. You haven't got any case like this?
>
> MS. DELUHERY: I have not cited a case similar to ours, that's correct, your Honor.
>
> THE COURT: Yeah, and I appreciate your candor. So here's a statement made in the course of litigation but no other identifiable harm.

RA0044-0045.

Additionally, Wiener's argument is wrong. To the extent Wiener is arguing that he does not need to establish an injury beyond the statutory violation itself, the argument was expressly rejected in *TransUnion*, 141 S. Ct. at 2205. There, the Supreme Court stated that "this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that

1053739\313977062.v1

right.'" *Id*. citing *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016). The Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

To the extent Wiener is attempting to argue that incurring fees and costs as a result of filing a (meritless) motion in the North Carolina litigation somehow bears a "close relationship" with invasion of privacy harm, his argument makes little sense. Attorney's fees and costs and/or distress incurred due to litigation does near bear any reasonable relationship to what courts traditionally consider as invasion of privacy harm. At bottom, Wiener has not adequately plead that he was injured by the alleged statutory violation at all—much less in a way that closely relates to a traditional analog for a federal lawsuit.

Wiener relies on one decision to support his contention that he has alleged Article III standing based on this unpled theory of invasion of privacy— *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184 (7th Cir. 2021). Wiener Br. at 34-35. However, *Persinger* is factually distinguishable. Wiener acknowledges, as he must that, unlike here, the plaintiff in *Persinger* testified that defendant had "invaded her privacy." Wiener Br. at 34. No such allegations nor testimony exist in this case. Furthermore, *Persinger* did not involve witness affidavits or testimony used in underlying litigation involving the same parties. Rather, *Persinger* was decided at the summary judgment stage where the court based its standing determination, in

part, on the plaintiff's deposition testimony that she had suffered dignitary harm analogous to intrusion upon seclusion. Again, no such allegations exist in this case nor would such allegations even make any sense here where it was Wiener who filed a lawsuit about his insurance file and where much of the purported Disclosure of No Other Inquiries was apparently made in response to questioning from Wiener's own attorney. RA0032-0037.

Finally, another reason why this situation bears no "close relationship" to common law tort injuries, such as invasion of privacy and intrusion upon seclusion, is because the Defendants are shielded from such liability for statements made in the Sager Affidavit and Sager Testimony in the North Carolina litigation. This is because North Carolina, like most states, recognizes an absolute privilege for relevant statements made in the course of North Carolina judicial proceedings against civil claims. *Edwards v. Parrish Tire Co.*, 2019 U.S. Dist. LEXIS 152041, at *5-9 (M.D.N.C. 2019) *citing McManaway v. LDS Family Servs.*, 2010 N.C. App. LEXIS 2305 (N.C. Ct. App. 2010) (dismissing plaintiff's obstruction of justice claim based on defendants' allegedly false statements made during a judicial proceeding as such statements were absolutely privileged).

The reasoning for applying the privilege in such a situation is obvious. To do otherwise, would set bad policy and would create a chilling impact upon witnesses' ability to testify candidly in litigation. North Carolina's absolute privilege has its

roots in a long-standing bar on civil claims for defamation based off statements made in judicial proceedings. *Id. citing Jones v. Coward*, 666 S.E.2d 877, 879 (N.C. Ct. App. 2008). However, the privilege now applies to all civil claims. *Id*.

Some courts have applied common law based litigation privilege to FCRA claims. For instance, in *Banga v. Equifax Info. Servs. LLC*, 2015 U.S. Dist. LEXIS 79342, at *11-12 (N.D. Cal. 2015), the court applied California's litigation privilege to bar plaintiff's FCRA in a similar situation. The court in *Banga* concluded:

> To the extent that Banga's claims are based on the disclosure of her Social Security number and other personal identifying information during the course of *Banga II* and the subsequent Ninth Circuit appeal, they are barred by the litigation privilege. Each disclosure of her personal identifying information was a communication (1) that was made in a judicial proceeding (2) by a litigant (3) to achieve the objects of the litigation and (4) that had some connection or logical relation to the action. [citation omitted]. While the disclosure of at least some of that information was not specifically "permitted by law," the disclosure was made in the context of a "category of communication permitted by law," i.e., an exhibit attached to a declaration submitted in support of a motion for summary judgment. [citation omitted]. In these circumstances, the privilege applies. *See G.R. v. Intelligator*, 185 Cal. App. 4th 606, 616-19 (2010) (in appeal from postmarital dissolution proceedings, holding that litigation privilege barred husband's tort claims arising from wife's filing of his unredacted credit report in violation of Rule 1.20 of the California Rules of Court, which requires the redaction of Social Security and financial account numbers).

*Id.*

*Banga* appears to be an outlier opinion and represents a minority view. However, the point is not that MIB and Sager are entitled to litigation privilege here as to Wiener's FCRA claims. Rather, the availability of litigation privilege as a

shield to any allegedly analogous common law torts itself demonstrates that issues in this case bear no "close relationship" to invasion of privacy and intrusion upon seclusion injuries. Therefore, this Court should decline to find Article III standing based upon Wiener's common law analogue argument.

As the party invoking federal jurisdiction, it is plaintiff's burden to demonstrate that he has standing. *TransUnion*, 141 S. Ct. at 2207-08. Wiener has failed to do so. The District Court correctly dismissed the case.

## <u>CONCLUSION</u>

Based on the foregoing reasons and authorities, this Court should affirm the dismissal by the United States District Court for the District of Massachusetts.

Respectfully submitted,

Defendants-Appellees

By: Their Attorneys

/s/ *Marissa I. Delinks*
Marissa I. Delinks, Bar Id. 111180
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Tel: 617-213-7000/Fax: 617-213-7001
mdelinks@hinshawlaw.com

Dated:     June 30, 2023

1053739\313977062.v1

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,214 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14 pt Times New Roman.

1053739\313977062.v1

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 30, 2023.

*/s/ Marissa I. Delinks*
Marissa I. Delinks
Bar Id. 111180

1053739\313977062.v1